# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# EASTERN DIVISION

| | |
|---|---|
| DANNY B. SINGLETARY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No: 1:14-cv-01214-STA-tmp |
| ) | |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

## ORDER AFFIRMING THE DECISION OF THE COMMISSIONER

Plaintiff Danny B. Singletary filed this action to obtain judicial review of Defendant Commissioner's final decision denying his application for disability insurance benefits under Title II of the Social Security Act ("Act") and an application for supplemental security income ("SSI") benefits based on disability under Title XVI of the Act. Plaintiff's applications were denied initially and upon reconsideration by the Social Security Administration. Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which was held on October 12, 2010. On October 22, 2010, the ALJ denied the claim. The Appeals Council granted the request for review and remanded for another hearing which was held on February 28, 2013. A second unfavorable decision was issued on April 18, 2013. The Appeals Council denied the request for review of this decision. Thus, the April 18, 2013, decision became the Commissioner's final decision. For the reasons set forth below, the decision of the Commissioner is **AFFIRMED**.

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he was a party. "The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying,

1

or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."[1] The Court's review is limited to determining whether there is substantial evidence to support the Commissioner's decision,[2] and whether the correct legal standards were applied.[3]

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[4] It is "more than a mere scintilla of evidence, but less than a preponderance."[5] The Commissioner, not the Court, is charged with the duty to weigh the evidence, to make credibility determinations and resolve material conflicts in the testimony, and to decide the case accordingly.[6] When substantial evidence supports the Commissioner's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion.[7]

Plaintiff was born on July 20, 1959. He has a limited education. He previously worked as a commercial truck driver, a fork lift operator, a river boat crew member, and a general laborer. In his Disability Report, Plaintiff alleged disability due to COPD, emphysema, a hernia,

---

[1] 42 U.S.C. § 405(g).

[2] *Id.*

[3] *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). *See also Landsaw v. Sec'y of Health & Human Servs*, 803 F.2d 211, 213 (6th Cir. 1986).

[4] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389 (1971)).

[5] *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

[6] *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

[7] *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

steel plates in his head, screws in his neck, nerve problems, memory loss, lower stomach pain, and diarrhea with an onset date of December 1, 2008.

The ALJ made the following findings: (1) Plaintiff met the insured status requirements through December 31, 2013; (2) Plaintiff has not engaged in substantial gainful activity since the alleged onset date; (3) Plaintiff has the following severe impairments: disorders of the spine, hepatitis C, chronic obstructive pulmonary disease, affective mood disorder and anxiety related disorder; but he does not have impairments, either alone or in combination, that meet or equal the requirements of any listed impairment contained in 20 C.F.R. pt. 404, subpt. P, app. 1 of the listing of impairments; (4) Plaintiff retains the residual functional capacity to perform light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b) except that he that should avoid exposure to temperature extremes of hot and cold and concentrated exposure to pulmonary irritants; he is able to carry out simple instructions at work that involves occasional contact with coworkers and supervisors but no public interaction; (5) Plaintiff is unable to perform his past relevant work; (6) Plaintiff was defined as a younger individual on the alleged onset date, but subsequently changed age category to closely approaching advanced age; (7) transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules ("the Grids") as a framework supports a finding that Plaintiff is not disabled whether or not she has transferable job skills; (8) considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform; (9) Plaintiff was not under a disability as defined in the Act at any time through the date of this decision.[8]

---

[8] R. 71 - 84.

The Social Security Act defines disability as the inability to engage in substantial gainful activity.[9] The claimant bears the ultimate burden of establishing an entitlement to benefits.[10] The initial burden of going forward is on the claimant to show that he or she is disabled from engaging in his or her former employment; the burden of going forward then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background.[11]

The Commissioner conducts the following, five-step analysis to determine if an individual is disabled within the meaning of the Act:

1. An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

2. An individual who does not have a severe impairment will not be found to be disabled.

3. A finding of disability will be made without consideration of vocational factors, if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the regulations.

4. An individual who can perform work that he has done in the past will not be found to be disabled.

5. If an individual cannot perform his or her past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.[12]

Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis.[13] Here, the sequential analysis proceeded to the fifth step

---

[9] 42 U.S.C. § 423(d)(1).

[10] *Born v. Sec'y of Health & Human Servs*, 923 F.2d 1168, 1173 (6th Cir. 1990).

[11] *Id.*

[12] *Willbanks v. Sec'y of Health & Human Servs*, 847 F.2d 301 (6th Cir. 1988).

with a finding that, although Plaintiff cannot perform his past relevant work, there is a substantial number of jobs in the national economy that he can perform.

Plaintiff argues that substantial evidence does not support the ALJ's findings. He specifically argues that the ALJ erred in his severity findings at step two of the sequential process and in the weighing of the medical opinion evidence. Plaintiff's arguments are not persuasive.

At step two, a claimant bears the initial burden of proof to demonstrate that he has a severe impairment which is an impairment or combination of impairments which significantly limit a claimant's physical or mental ability to perform basic work activities without regard to age, education, or work experience.[14] In order to meet this burden, the claimant must come forward with medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged.[15]

---

[13] 20 C.F.R. § 404.1520(a).

[14] 20 C.F.R. §§ 404.1520, 404.1521, 416.920, 416.921. Basic work activities encompass the abilities and aptitudes necessary to perform most jobs, such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking; understanding, performing, and remembering simple instructions; using judgment; responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work situation. 20 C.F.R. §§ 404.1521, 416.921.

[15] 42 U.S.C. § 423(d)(5)(A); *see also Younan v. Comm'r of Soc. Sec.*, 2012 WL 5439286 at *8 (E.D. Mich. Aug. 14, 2012) (citing *Weckbacher v. Comm'r of Soc. Sec.*, 2012 WL 2809697 at *9 (S.D. Ohio July 10, 2012)), *adopted by* 2012 WL 5439280 (E.D. Mich. Nov. 7, 2012) ("In considering whether a claimant has a severe impairment, an ALJ must not accept unsupported medical opinions or a claimant's subjective complaints.")).

The severity requirement is used to screen out claims that are medically groundless.[16] An impairment is not severe if it is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience."[17] Accordingly, if an impairment or combination of impairments would have no more than a minimal effect on a claimant's ability to work, the sequential evaluation process is terminated at step two.[18] "Only those claimants with slight abnormalities that do not significantly limit any 'basic work activity' can be denied benefits without undertaking [a] vocational analysis."[19] The Sixth Circuit Court of Appeals discussed the severity requirement in *Long v. Apfel.*[20]

> In *Higgs v. Bowen*, this court declared that 'an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience.' *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). The *Higgs* court observed that 'this lenient interpretation of the severity requirement in part represents the courts' response to the Secretary's questionable practice in the early 1980s of using the step two regulation to deny meritorious claims without proper vocational analysis.' *Id.* But the court also recognized that 'Congress has approved the threshold dismissal of claims obviously lacking medical merit....' *Id.* That is, 'the severity requirement may still be employed as an administrative convenience to screen out claims that are "totally groundless" solely from a medical standpoint.' *Id.* at 863. Indeed, the *Higgs* court approved of that practice; it affirmed dismissal because the record contained no objective medical evidence to support Ms. Higgs's claims of severe impairment. Particularly relevant to the case at bar, the *Higgs* court observed.

---

[16] *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("[T]his appeal presents the exceptional 'totally groundless' claim properly dismissed on the medical evidence alone. There is nothing in the objective medical record credibly suggesting that Mrs. Higgs was significantly affected by any of her impairments on or before June 30, 1979.")

[17] *Farris v. Secretary*, 773 F.2d 85, 90 (6th Cir. 1985) (quoting *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)).

[18] *Id.*

[19] *Bowen v. Yuckert*, 482 U.S. 137, 158–59 (1987) (O'Connor, J., concurring).

[20] 1 F. App'x 326 (6th Cir. 2001).

'The mere diagnosis of [an ailment], of course, says nothing about the severity of the condition.' *Id.* When doctors' reports contain no information regarding physical limitations or the intensity, frequency, and duration of pain associated with a condition, this court has regularly found substantial evidence to support a finding of no severe impairment. *See, e.g., id.* (citing cases).

Case law since *Higgs* confirms this circuit's practice in that respect. Compare *Maloney v. Apfel*, 211 F.3d 1269 (table), No. 99-3081, 2000 WL 420700 at (6th Cir. 2000) (per curiam) (finding substantial evidence to support denial when record indicated claimant showed symptoms and was diagnosed with disorder but did not contain evidence of a disabling impairment that would prevent work); and *Foster v. Secretary of Health & Human Svcs.*, 899 F.2d 1221 (table). No. 88-1644, 1990 WL 41835 at *2 (6th Cir. 1990) (per curiam) (finding substantial evidence to support denial when the claimant produced no evidence regarding the frequency, intensity, and duration of arthritic pain; the record indicated that he was no more than slightly or minimally impaired); with *Burton v. Apfel*, 208 F.3d 212 (table), No. 98-4198. 2000 WL 125853 at *3 (6th Cir. 2000) (reversing finding of no severe impairment because record contained diagnoses and remarks from a number of treating physicians and psychologists to the effect that claimant was 'unable to work ... due to the complexity of her health problems' (quoting physician)); and *Childrey v. Chater*, 91 F.3d 143 (table). No. 95-1353, 1996 WL 420265 at *2 (6th Cir. 1996) (per curiam) (reversing finding of no severe impairment because record contained an assessment by a consulting physician reflecting a variety of mental problems that left her "not yet able to really care for herself alone," reports of two other physicians corroborating this, consistent testimony from the claimant, and no medical evidence to the contrary (quoting physician)).[21]

In the present case, the ALJ determined that Plaintiff's headaches, memory loss and pain, blurred vision, leg cramps, and lesions on his hands were not severe impairments as defined by the Act. In making that determination, the ALJ looked at the following evidence.

Diagnostic testing showed there was no intracranial abnormality, no significant intraorbital abnormality, and Plaintiff's facial fractures were healing well.[22] During the first month after the incident, Plaintiff went to various emergency rooms with complaints of facial pain and requested pain medication, but after that there was no evidence of treatment for such

---

[21] *Long*, 1 F. App'x 326 at 332.

[22] R. 476, 647.

7

complaints.[23] Although Plaintiff alleged that his vision was blurred, his uncorrected vision was 20/50 in both eyes.[24] Computed tomography (CT) studies of the head showed no intracranial or intraorbital abnormality, and Plaintiff subsequently denied problems with his vision.[25] And, there was no evidence of an underlying chronic condition that would cause persistent leg cramping.

Plaintiff did not allege skin lesions as a disabling impairment at the hearing or in his disability report, and there are few records mentioning a skin issue. Donita Keown, M.D., a consultative examiner, noted "incidental findings of skin lesions" on Plaintiff's hands.[26] Plaintiff sought treatment for lesions or blisters on his hands only once.[27] The ALJ did not err in failing to evaluate a condition that Plaintiff did not allege to be disabling, and the ALJ's step two determination is supported by substantial evidence.

Furthermore, if an individual has at least one severe impairment, as in the present case, the ALJ must continue through the sequential evaluation process and assess how much work the individual can still do.[28] When making this assessment, the ALJ must "consider limitations and restrictions imposed by all of the individual's impairments, even those that are non-severe."[29] In making the residual functional capacity determination in this case, the ALJ considered all of

---

[23] R. 617, 650.

[24] R. 326, 356, 736.

[25] R. 663, 813 - 45, 1140, 1188, 1197.

[26] R. 735.

[27] R. 913.

[28] *See Kirkland v. Comm'r of Soc. Sec.*, 528 F. App'x 425, 427 (6th Cir. 2013).

[29] *Id.* (quoting *Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007)).

Plaintiff's medically determinable impairments, including those impairments he found to be not severe as defined by the Act. Thus, Plaintiff's step two argument fails.

Plaintiff also argues that the ALJ failed to properly weigh the medical source opinions. Medical opinions are to be weighed by the process set forth in 20 C.F.R. § 404.1527(c). Under the treating physician rule, an ALJ must give controlling weight to the opinion of a claimant's treating physician if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record."[30] The term "not inconsistent" is meant to convey that "a well-supported treating source medical opinion need not be supported directly by all of the other evidence, (i.e., it does not have to be consistent with all the other evidence) as long as there is no other substantial evidence in the case record that contradicts or conflicts with the opinion."[31]

If an ALJ decides that the opinion of a treating source should not be given controlling weight, the ALJ must take certain factors into consideration when determining how much weight to give the opinion, including "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source."[32] Any decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be

---

[30] 20 C.F.R. § 404.1527(c)(2).

[31] Soc. Sec. Rul. 96–2P.

[32] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

9

sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."[33]

Generally, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination,[34] and an opinion from a medical source who regularly treats the claimant is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship.[35] In other words, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker."[36] Opinions from non-treating sources are not assessed for controlling weight. Instead, these opinions are weighed based on specialization, consistency, supportability, and any other factors "which tend to support or contradict the opinion" may be considered in assessing any type of medical opinion.[37] State agency consultants are highly qualified specialists who are also experts in the Social Security disability programs, and their opinions may be entitled to great weight if the evidence supports their opinions.[38]

Plaintiff's primary care physician, Mohammad Yousuf, M.D., completed a questionnaire in which he opined that Plaintiff was extremely limited in his ability to perform any type of work activities. The ALJ considered Dr. Yousuf's opinion but found that it was not supported by his

---

[33] Soc. Sec. Rul. 96–2P.

[34] 20 C.F.R. § 404.1502, 404.1527(c)(1).

[35] *Id.* § 404.1502, 404.1527(c)(2).

[36] Soc. Sec. Rul. No. 96–6p at *2.

[37] 20 C.F.R. § 404.1527(c).

[38] *See* 20 C.F.R. § 404.1527(e)(2)(i).

own treatment notes, nor by the other evidence of record. While Dr. Yousuf saw Plaintiff regularly through 2010 for medication refills, the office visit notes do not include contemporaneous observations or objective testing to support the opinion.[39] State agency reviewing physician Marvin Cohn, M.D., commented that Dr. Yousuf's office visit notes consisted of a single word or checkmarks and did not convey objective findings or impressions clearly.[40]

Dr. Yousuf's opinion that Plaintiff could only lift one to five pounds was contradicted by Plaintiff's own statements that he could lift between ten and thirty pounds.[41] Plaintiff stated that he performed daily activities such as preparing meals, performing household chores, and playing video games, which required fine manipulation.[42] Plaintiff also engaged in activities such as changing a tire and burning yard waste.[43]

Diagnostic testing showed only that Plaintiff had a remote history of cervical fusion that did not prohibit him from returning to work and mild degenerative changes in the lumbar spine.[44] Cervical spine x-rays taken during the relevant period showed evidence of the prior fusion and degenerative disc disease but were otherwise normal.[45] Other treating clinicians consistently described normal neurological findings.[46]

---

[39] R. 492-99, 749-59.

[40] R. 778.

[41] R. 117, 326, 358.

[42] R. 321-25, 353-357, 707-08.

[43] R. 820, 1007-09.

[44] R. 81, 735, 767.

[45] R. 802.

At the consultative examination with Donita Keown, M.D., Plaintiff demonstrated a brisk gait that was unremarkable; he was able to change from sitting to standing without difficulty; there were no neurological deficits; he exhibited full strength, good range of motion; straight leg raise testing was negative; and he complained of discomfort only with manipulation of the left shoulder.[47] Dr. Keown opined that Plaintiff had mild degenerative disc disease without any evidence of disc herniation, encroachment of neural elements or central stenosis, hepatitis C by history with no evidence of end-stage liver disease or portal hypertension, and mild COPD; Plaintiff was capable of sitting eight hours in an eight-hour work day, as well as standing or walking eight hours in an eight-hour work day, and could lift and carry without restriction.[48] The ALJ gave considerable weight to Dr. Keown's opinion because it was well supported by the objective evidence of record, including both her own examination of Plaintiff and the record as a whole.

The ALJ gave no weight to the opinion of physician's assistant Kirsten Sass that Plaintiff was "unable to maintain gainful employment."[49] PA Sass did not include any specific functional limitations caused by Plaintiff's impairments or cite to any objective findings to support her opinion. Furthermore, it appears that Plaintiff asked PA Sass to write a letter stating "unable to maintain gainful employment."[50] On the date that Plaintiff asked her to write the letter, he

---

[46] R. 617, 662-63, 808, 814, 821, 840-51, 944, 1107, 1163.

[47] R. 736-37.

[48] R. 738.

[49] R. 1161.

[50] R. 1201.

denied shortness of breath, fatigue, cervical pain, and leg cramps, limiting his complaints to lumbar pain and anxiety secondary to his wife's health condition. R. 1200. Treatment notes showed that Plaintiff was in no acute distress and he had good symptom control with medication.[51] The ALJ properly gave no weight to PA Sass's opinion.

The ALJ also gave less weight to the opinions of Dr. Yousuf and PA Sass because neither considered Plaintiff's drug-seeking behavior as a motivation for his complaints of pain in light of the largely benign objective findings in the record. Drug screens and statements to non-treating sources showed that Plaintiff did not regularly take his prescribed pain medication but did take other substances such as marijuana and crack cocaine.[52] The ALJ found that Plaintiff's drug-seeking behavior diminished his credibility. An ALJ may consider drug seeking behavior as a credibility factor.[53]

Plaintiff argues that the ALJ failed to give weight to the opinion of consultative examiner Dennis Wilson, Ph.D., that he had moderate limitations in sustaining concentration and persistence, and in his ability to interact with others.[54] To the contrary, the ALJ credited this opinion and incorporated limitations into the residual functional capacity assessment to account for these restrictions. To account for Dr. Wilson's findings, the ALJ limited Plaintiff to simple tasks that involved occasional interaction with coworkers and supervisors and no contact with the general public.

---

[51] R. 1199-1200.

[52] R. 76, 886, 1110, 1211, 1215.

[53] *See Lawson v. Comm'r of Soc. Sec.*, 192 F. Appx 521, 528 (6th Cir. 2006) (credibility factors considered by the ALJ included drug-seeking behavior).

[54] R. 704-09.

Substantial evidence supports the weight given to the medical evidence and opinions in the record and the evaluation of Plaintiff's residual functional capacity. The ALJ properly determined that Plaintiff could perform a limited range of light work, and Plaintiff has failed to show that he is otherwise more limited.

At step five, the Commissioner must identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity and vocational profile. The Commissioner may carry this burden by applying the Grids[55] which direct a conclusion of "disabled" or "not disabled" based on the claimant's age and education and on whether the claimant has transferable work skills.[56] However, if a claimant suffers from a limitation not accounted for by the Grids, as in the present case, the Commissioner may use the Grids as a framework for his decision but must rely on other evidence to carry her burden. In such a case, the Commissioner may rely on the testimony of a vocational expert to find that the claimant possesses the capacity to perform other substantial gainful activity that exists in the national economy.[57]

Here, the ALJ found that Plaintiff suffered from limitations beyond those accounted for by the Grids, and, therefore, used the Grids merely as a framework in determining whether Plaintiff could perform other work. The ALJ then relied on the testimony of a vocational expert in determining that there was a significant number of jobs in the national economy that Plaintiff could perform. This testimony provides substantial evidence to support the ALJ's finding that

---

[55] 20 C.F.R. Pt. 404, Subpt. P, App. 2.

[56] *Wright v. Massanari*, 321 F.3d 611, 615 (6th Cir. 2003); *Burton v. Sec'y of Health & Human Servs.*, 893 F.2d 821, 822 (6th Cir. 1990).

[57] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 537 – 38 (6th Cir. 2001); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996).

Plaintiff is not disabled.[58]  Accordingly, substantial evidence supports the ALJ's determination that Plaintiff was not disabled, and the decision of the Commissioner is **AFFIRMED**.

    **IT IS SO ORDERED.**

                    **s/ S. Thomas Anderson**
                      S. THOMAS ANDERSON
                      CHIEF UNITED STATES DISTRICT JUDGE

                      Date:    July 10, 2017.

---

[58] *See Foster*, 279 F.3d at 356-57 (finding that substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question).